[No. 31630.   Department Two.   January 24, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. LEE RAYMOND
GOEBEL, *Appellant*.[1]

[1]Reported in 240 P. (2d) 251.

*J. Edmund Quigley* and *Anthony Savage*, for appellant.
*Charles O. Carroll* and *Kathreen Mechem*, for respondent.

HAMLEY, J.—This appeal follows the second trial of Lee Raymond Goebel on charges of committing rape and sodomy on a woman on February 8, 1949 (counts I and II), and of committing rape and sodomy on another woman on March 29, 1949 (counts III and IV). At the first trial, Goebel was convicted on all four counts. We reversed and remanded for a new trial. *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300. At the new trial, Goebel was acquitted on the two rape counts, but convicted on the sodomy counts. Judgment was entered accordingly, and defendant appeals.

Appellant first assigns as error the admission of a signed confession (exhibit 19) relating the details of an assault committed by appellant upon a third woman on March 29, 1949, just prior to the assault charged in counts III and IV.

This is the same exhibit the admission of which, in the first Goebel trial (as exhibit 17), led to the reversal and remand. In the first trial, the confession of the other offense was admitted for the purpose of impeachment upon a collateral issue—appellant's route on the night in question. We held the evidence inadmissible on that basis. On that appeal, the state argued that the evidence was also admissible (1) to rebut the defensive theory, and (2) to show the plan, scheme, or bent of mind of defendant. We did not pass on the merits of that contention, but held that the admission of evidence, received by the trial court on an erroneous theory, may not be justified on a proper theory advanced for the first time on appeal.

At the second trial, exhibit 19 was not offered for the purpose of impeachment or to affect appellant's credibility as a witness, as he did not testify in his own defense. Instead, the state offered the exhibit on its case in chief to show intent, motive, *modus operandi*, and plan, scheme, or design. Over appellant's objection, the trial court admitted the exhibit as tending to show plan, scheme, or design.

At the time the exhibit was received, the court instructed the jury that exhibit 19 was admitted for a strictly limited purpose and should be considered only for whatever bearing it might have upon the question of a common scheme or plan in connection with the rape charges contained in counts

I and III. The jury were told that if they found that the exhibit contained evidence of the commission of any crime by appellant, "you will totally disregard that fact." The substance of this instruction was repeated in the court's instruction 10, given at the close of the trial.

■ The rule, amply documented in our previous opinion involving this appellant, is that a defendant must be tried for the offenses charged in the indictment or information, and that evidence of unrelated crimes may not be admitted. As also indicated in *State v. Goebel, supra,* certain exceptions to this rule of exclusion have developed. These exceptions are to show (1) motive, (2) intent, (3) the absence of accident or mistake, (4) a common scheme or plan, or (5) identity. This list of exceptions is not necessarily exclusive, the true test being whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged. *State v. Lew,* 26 Wn. (2d) 394, 174 P. (2d) 291.

■ The only purpose of showing a common scheme or plan is to establish, circumstantially, the commission of the act charged and the intent with which it was committed. 2 Wigmore on Evidence (3d ed.) 192, § 300. Strictly speaking, the scope of this exception is limited to evidence which shows some causal connection between the two offenses, so that proof of the other offense could be said to evidence a pre-existing design, system, plan, or scheme directed toward the doing of the very act charged. Wigmore, *supra,* p. 202, § 304. The exception has been so construed and applied in such cases as *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042, involving a prosecution for embezzling funds of an employer, and *State v. Craddick,* 61 Wash. 425, 112 Pac. 491, which was a prosecution for obtaining money under false pretenses, through a conspiracy with a swindling clairvoyant.

In later decisions of this and other courts, however, the plan, scheme, or design exception has frequently been held to be applicable even though the evidence of the other offense did not tend to show a design or plan to commit the specific act charged. See *State v. Schuman,* 89 Wash. 9, 153

Pac. 1084 (prosecution for accepting the earnings of a prostitute, in which testimony of other prostitutes as to identical arrangements was admitted); *State v. Clamp*, 164 Wash. 653, 3 P. (2d) 1096, 80 A. L. R. 1302 (prosecution for obtaining money by false pretenses, in which evidence of a similar crime committed in another city was admitted); *State v. Brown*, 31 Wn. (2d) 475, 197 P. (2d) 590, 202 P. (2d) 461 (prosecution for murder in connection with a robbery, in which evidence of another robbery and assualt of similar nature committed later on the same day was admitted); and *People v. Cosby*, 137 Cal. App. 332, 31 P. (2d) 218 (prosecution for assault to commit rape, in which evidence that the defendant had similarly lured other women to his apartment was admitted).

In cases of the kind just referred to, it would seem that the reference to plan, scheme, or design has been merely a means of characterizing the similarities between the other offense and the acts charged. In each of these cases, the evidence admitted actually fell under one of the other recognized exceptions—motive in the *Cosby* case, and intent in the other cases.

It seems to us that, in the instant case, the trial court likewise employed the term "plan, scheme, or design" to indicate the general similarity of the offenses and hence the relevancy of this evidence in proving an essential ingredient of the crime charged. The fact that appellant may have committed a similar offense on March 29, 1949, certainly did not tend to establish a design or plan to commit the offense charged, perpetrated later that day. Much less did it tend to prove a design or plan to commit the offense charged to have occurred on February 8, 1949. However, because of the marked similarity between these offenses, this evidence may nevertheless have been relevant and necessary to prove some essential point which the state was required to establish.

We turn, then, to this further question of relevancy and necessity. The points of similarity between the facts testified to under the rape counts, and the facts related in appellant's confession of a third rape, are these: (a) appel-

lant met the woman in downtown Seattle late at night and struck up a conversation by identifying himself as a bus driver and claiming to know the woman accosted; (b) appellant offered to take the woman to her home in his truck; (c) when the invitation had been accepted, he drove, instead, to a secluded spot and parked the truck; and (d) he then, through the use of force by placing his hand on the woman's neck, committed one or more acts of rape in the cab of the truck.

These points of similarity do not tend to prove that the complaining witnesses involved in counts I and III did not consent to the assaults; nor does such similarity make the exhibit admissible for the purpose of showing a lustful disposition. It seems to us, however, that the similarity of these factors does tend to establish two facts which the state had to prove: appellant's identity as the person who committed the acts charged in counts I and III; and the fact that those acts could be accomplished in the cab of the truck, as alleged.

Our next inquiry is whether the relevancy of the evidence as to the other offense, and the necessity of introducing such evidence to prove the state's case, were outweighed by the prejudice which would result therefrom. In *State v. Goebel, supra,* we pointed out that evidence of other crimes should not be admitted, even though falling within one of the recognized exceptions to the rule of exclusion, where not essential to the establishment of the state's case, when the trial court is convinced that its effect would be:

". . . to generate heat instead of diffusing light, or, as is said in one of the law review articles above referred to, where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." (p. 379.)

The exhibit was admitted in the course of the state's case in chief. It was not then known whether Goebel would take the stand, and, if so, whether he would admit the occurrences, but claim consent, as he had done at the first trial. (As it turned out, Goebel did not take the stand at the second trial.) Hence, the state was warranted in present-

ing all available relevant testimony tending to establish appellant's identity as the man who committed the offenses covered by counts I and III. Moreover, there was good reason for believing, before the exhibit was submitted, that appellant would contend that the acts could not be committed in the cab of the truck. Such belief was justified by the course pursued by appellant's counsel during extensive cross-examination of the prosecuting witnesses.

Exhibit 19 was introduced in connection with the rape counts. It appears not to have been seriously prejudicial to appellant as to those counts, since he was acquitted on both rape counts. It hardly seems likely that the exhibit could have been more prejudicial as to the sodomy counts, in view of the court's instruction that the exhibit was to be considered only as to the rape counts.

The trial court expressly ruled that the facts related in exhibit 19 were sufficiently relevant and necessary to the establishment of the state's case to justify the admission of the exhibit despite its prejudicial nature. In view of the considerations reviewed above, we are not inclined to hold that the trial court abused its discretion in this regard. The admission of exhibit 19 was, therefore, not reversible error.

Appellant contends that the trial court erred in permitting a witness to testify that the complaining witness involved in counts III and IV came to her home early on the morning of March 29, 1949, and complained that she had been "followed by a man in a truck" and had been "choked and raped."

The testimony that the complaining witness said she had been "followed by a man in a truck" was stricken with an accompanying cautionary instruction, when first elicited during the state's case. However, the same testimony was later renewed and emphasized in direct response to questions propounded by appellant's counsel on cross-examination. Having reintroduced the evidence complained of and thus added to the prejudice, if any, resulting from its first admission, appellant may not now predicate error upon the giving of such testimony.

▮ . Nor do we believe that the court erred in receiving, over objection, the witness' testimony that the prosecutrix stated that "he choked and raped me."

This testimony was admitted to prove that the complaining witness properly and promptly made hue and cry. The general rule is that, in cases of this kind, a witness may testify that the prosecutrix made complaint after the assault, but such witness may not tell what the prosecutrix said concerning the circumstances and details of the assault. *State v. Hunter,* 18 Wash. 670, 52 Pac. 247; *State v. Griffin,* 43 Wash. 591, 86 Pac. 951.

Enough must be given, however, to identify the nature of the offense of which complaint was made. Hence it has been held unobjectionable for the witness to recount that the complaint was of rape. *State v. Dixon,* 143 Wash. 262, 255 Pac. 109. We do not believe that the addition of the one word "choked," as used in the context of the witness' testimony, can be regarded as substantially offending the rule against disclosure of circumstances and details. Without considering the state's additional argument that this testimony was not, in any event, prejudicial as to the sodomy counts, we are of the view that the court did not err in receiving this testimony.

Appellant next contends that the trial court erred in failing to grant a motion for mistrial, and a motion for new trial, based upon alleged prejudicial misconduct of the deputy prosecuting attorney in her closing argument to the jury.

During this argument, the deputy prosecuting attorney said:

"Now, in regard to whether the act was possible, then, ladies and gentlemen, take the defendant's word as to whether or not he could accomplish intercourse, *sodomy* by force. Take his own word as to how he could—look at exhibit 19, what he said." (Emphasis supplied.)

Counsel for appellant interposed an objection and asked for a mistrial on the ground that exhibit 19 had been introduced only in connection with the rape counts. The motion for mistrial was denied, and the trial court invited a motion to strike the remarks. Counsel for appellant did not make

such a motion, but said, "We take our exception to it." The deputy prosecuting attorney then moved that the remarks be stricken and the jury be instructed to disregard any such remarks. This was done.

■ We are convinced that the reference to sodomy in connection with exhibit 19 was an inadvertence. The deputy prosecuting attorney apparently intended to say "rape by force," instead of "sodomy by force." Force is an essential ingredient of the crime of rape, but not of sodomy. The misstatement was immediately corrected, in so far as possible, by the direction to strike the remark and the instruction to disregard it. This was done on the motion of the deputy prosecuting attorney after counsel for appellant indicated that he was content to leave the record as it was. Under the indicated circumstances, we do not believe that the misconduct was so flagrant or the questioned remark so prejudicial that it must be held to constitute prejudicial error despite the action of the state and trial court in correcting the situation.

Appellant contends, finally, that the trial court erred in denying appellant's request that one of the prosecuting witnesses be instructed not to discuss her testimony with other witnesses for the state; in criticizing defense counsel for making such a request in the presence of the jury; and by instructing the jury to disregard the request or any inference from it.

At the close of the testimony of the complaining witness as to counts I and II, the court requested her to remain in attendance outside the court room. Counsel for appellant then inquired, within the hearing of the jury:

"Might there be further instruction to the witness to not confer with any parties, complaining witnesses, or any witnesses called?"

The trial court then immediately excused the jury, whereupon the deputy prosecuting attorney took exception to the making of the above-quoted remarks in the presence of the jury. It was her view that appellant's counsel had thereby inferred that the state was coaching witnesses. The trial

court thereupon rebuked counsel for appellant, indicating that the quoted remarks intimated to the jury that the witness would go out and tell some other witness how to change his or her testimony to accord with the witness' testimony. Indicating that the witness had a right when outside, to discuss her testimony with anybody, the court stated that the remark "was uncalled for." Counsel for appellant then apologized to the court, stating that he had no intention of casting reflection. The jury returned to the court room and, upon the request of the state, the court instructed the jury as follows (to which appellant excepted):

"Just before recess, Members of the Jury, request was made by Mr. Quigley regarding a particular witness talking with other witnesses, asked the Court to instruct that witness. The Jury will disregard that remark or any inference from it."

In our opinion, the request of appellant's counsel did not carry the inferences attached to it by the state and by the trial court, and was an entirely proper request to make in front of the jury. Whether the request should have been granted was a matter resting within the sound discretion of the court, as in the case of exclusion of witnesses from the court room. See *State v. Colotis*, 151 Wash. 557, 276 Pac. 857; *Castleman v. Schiffner*, 160 Wash. 313, 294 Pac. 983; *State v. Brown, supra.* Ordinarily such requests are readily granted, and from our examination of the record we perceive no reason why it should not have been granted in this case. Later events proved that the complaining witness did thereafter confer with other witnesses.

However, there is nothing to indicate that appellant was actually prejudiced by the refusal to grant this request. We therefore conclude that, whether or not the trial court abused its discretion in denying the request, such denial was not reversible error.

The undeserved rebuke administered to appellant's counsel was not in the presence of the jury, and was therefore not prejudicial. The instruction to the jury to disregard appellant's request was given to eradicate assumed prejudice to the state's case arising from appellant's request.

The instruction was not critical of appellant or his counsel. While it should not have been given, we do not believe that it was prejudicial.

The judgment is affirmed.

SCHWELLENBACH, C. J., and FINLEY, J., concur.

HILL, J. (concurring specially)—As the author of the opinion in *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300, I expressed as accurately as I could the views of the court. In this concurring opinion, I speak only for myself.

It is my view that exhibit 19 should not have been admitted in either trial. The "minute peg of relevancy," if any, was "entirely obscured by the dirty linen hung upon it."

The majority seems to have serious doubts about the peg of "plan, scheme, or design," and, after going at some length into the question of relevancy, it suggests two what seem to me quite minute pegs: (1) identity, and (2) to establish the fact that the offenses could have been committed in the truck. The state did not offer exhibit 19 for either of those purposes, and the only purpose for which the jury could consider it under the court's instruction was "for whatever bearing it may have, if any, upon the question of common scheme or plan in connection with the charges of rape in Counts 1 and 3."

When the prejudicial effect of evidence is obvious, and the relevancy, if any, is so microscopic that it is difficult to determine its existence, it should not be admitted against the defendant in a criminal case. I can, however, concur in the affirmance of the conviction in this case because the trial court, by its instruction, limited the consideration of exhibit 19 to the rape counts, and on those counts the defendant was acquitted.

With reference to the claimed prejudicial misconduct of the deputy prosecuting attorney in referring to exhibit 19 in connection with the sodomy counts, the majority places some emphasis upon the fact that her remarks were inadvertent. The prejudicial effect, so far as the defendant is concerned, would be the same whether the statement was

inadvertent or intentional. This was, in my opinion, prejudicial error. We have, however, recognized on numerous occasions that such error can be cured by the court's instruction to disregard it, and by striking the objectionable matter from the record. It must also be conceded that we have held that there are circumstances in which no instruction can remove the prejudice. I believe this jury could and did follow the court's instruction to disregard the deputy prosecutor's statement in this case; if I had any doubt on this point, I would give the defendant the benefit of it. The absence of any passion or prejudice on the part of the jury is shown by its acquittal of the defendant on the rape counts. His guilt on the sodomy counts is established by the overwhelming weight of the evidence.

OLSON, J., concurs with HILL, J.

---

April 8, 1952. Petition for rehearing denied.